## THE WIDOW POREE v. ALEXANDER BONNEVAL.

Where a house and lot are sold at auction, after advertisement, the vendor is not bound by representations made by the auctioneer on the stand, unless they are ratified by the vendor; the advertisement being the only representation by which he is bound.

The second section of the act of 21st March 1850, forbidding an auctioneer to authorize any person to act as his substitute, does not prevent an auctioneer from employing a crier, provided the auctioneer superintends the sale in person.

APPEAL from the Second District Court of New Orleans, Lea, J. J. Magne, for plaintiff, made the following points which were deduced from an elaborate examination of the case, and of the authorities:

The testimony of defendant tending to prove, by parol evidence, a verbal representation made by the auctioneer, pending the sale of immovable property, and where, besides, better evidence exists, cannot be admitted. In support of this position he relied upon C. C. arts. 2584, 2415, 2256 and 2586. Macarty v. New Orleans Canal and Banking Company, 8 R. R. 105.

The evidence adduced shows conclusively that the representation complained of, and on which the defence hinges, was true, and was tacitly acknowledged to be such by defendant himself when he examined the house. At all events it was true, in the opinion of the auctioneer who made it.

Such a representation not having been embodied in the advertisements which preceded the first sale, not having been even proclaimed, but having only been made by the auctioneer in a low voice, as an answer to a question put to him, could not be considered as a condition of the sale; whence it follows, as is proved by the advertisements, that the two sales were made on the same conditions.

The representation complained of was not the act of plaintiff; was not made by her advice or consent; was not ratified by her, and, as an irresistible consequence, cannot affect her. Besides, such a representation is not binding upon the parties. C. C. arts. 2990, 2586. Nott & Co. v. Oakey, 19 L. R. 18. Nott & Co. v. Bank of Orleans, 19 L. R. 22. Layton et al. v. Hennen, 3d Ann. 1. 8 R. R. 102.

Apparent defects or vices do not affect contracts; and vague expressions, loose praises of the thing sold, are mere matter of opinion, and, as such, are not binding. C. C. arts. 2497, 2491. Pothier, Vente, No. 208. Domat, t. 1, p. 188, No. 11; p. 189, No. 12. 10 Duranton, No. 116. There is neither error nor fraud according to our law.

Were parties permitted to annul contracts on such light and frivolous grounds, no transaction would be attended with security. Litigation indeed would be the only result of such a state of affairs. And society, the stability and prosperity of which repose on the respect due to law and solemn obligations, would be seriously injured. C. C. arts. 1835, 1836, 1837, 1838, 1841, 2583, 2584 and 2585. 6 Toullier, No. 55. Pothier on Obl., No. 18. 2 Delvincourt, 459. Pothier, Vente, No. 208. Troplong, Vente, Nos. 526, 554. 3 Tapia, Febrero Novissimo, p. 189, No.

The sale *à la folle enchère* was legally made in the presence and under the control of the auctioneer. Act of 25th of March, 1844, p. 60.

*G. LeGardeur*, for defendant.

POREE
*v.*
BONNEVAL.

The judgment of the court was pronounced by

PRESTON, J. From the 30th of May to the 15th of June, 1850, the plaintiff advertised for sale, through the instrumentality of *R. Vignie*, an auctioneer of this city, a lot of ground on Moreau street, describing it, and a house on it thus described: "together with the three story brick house, containing on the ground-floor a large store room; on the second story, a large parlor and dining room, with a corridor; in the third story, three bed rooms and a closet, a kitchen containing nine rooms, the yard paved with flag stones, the roofs covered with slate."

On the 15th of June, the property was accordingly cried at auction; the defendant was the last and highest bidder, and it was adjudicated to him for the price of $3720.

He immediately examined the property and appeared satisfied. He took the titles to the property and had them examined by a notary to assure himself of their validity; but finally refused to comply with the terms and conditions of the sale; was put in default, and duly notified that the property would be re-sold on his account. It was again advertised for thirty days from time to time by the auctioneer, and on the 29th of August, 1850, was adjudicated to *E. Girard* for $3425.

The plaintiff sues the defendant for $415 90, the difference between the price of the first and second adjudications, including the expenses.

The defendant admits the adjudication to him, but resists the demand on the grounds: 1st. That the property was adjudicated to him as having undergone repairs and being in perfect tenantable order, whereas it had not been repaired for several years, and was in a most miserable and untenantable situation. 2d. That at the re-sale, declared upon by the plaintiff, the property was not, as at the former sale, proclaimed to have undergone repairs and to be in perfect order. 3d. That the re-sale was not a public sale at auction, as contemplated and required by law.

The claim against the defendant is made under article 2589 of our Code, which authorizes the second sale, on the failure of the defendant to pay the price of adjudication without sufficient cause, and renders him liable for the deficiency of price, the property having sold for less at the second than at the first sale, and for all expenses incurred subsequently to effect the second sale.

There were no fraudulent and fictitious bids by the vendor or her agents to deceive the bidders at the auction, and therefore the opinion and decision of the Supreme Court of the United States in the case of *Veazie* v. *Williams et al.*, 8 How. 134, on that subject, so strongly relied upon by the plaintiff's counsel, is not directly applicable. He contends, however, that this case is analogous in principle, if he has made out, by evidence, his first and second grounds for not complying with the adjudication.

The evidence to establish the facts relied upon in support of those grounds is that of *Mr. Ferret* and *Mr. Murphy*, that the crier for the auctioneer stated, on the stand, that the property was "*en bon etat*," which he construes into good repair, and that of other witnesses that it required repairs. The evidence was objected to, but admitted by the court, probably that in case of appeal, if this court should think it admissible, we might examine its effects—a wise course in cases tried without juries where the rejection of the evidence is doubtful and its reception occasions but little delay or inconvenience to the court.

POREE
*v.*
BONNEVAL.

We, however, think the evidence in this case should have no effect. It is not pretended that the vendor directed the auctioneer or his crier to make any representation as to the state of the house; and even if we suppose an engagement contracted beyond the authority given by her, she is not bound by it, unless expressly ratified by her, which is not alleged or proved. Code, art. 2990. She had advertised the premises for two weeks, for the express purpose, no doubt, of inducing persons to view them and judge for themselves. Her representations in her advertisement or other writing were the only representations by which she was bound. This court so expressly held in the case of *Layton's Executors* v. *Hennen*, 3d Ann. 1. The court said: "If the description was indefinite, the purchaser should have addressed his inquiries for further information to the executors, (vendors) who alone were authorized to give it. The advertisements are binding upon both the vendor and the purchaser, and neither party can insist on any thing which was said by the auctioneer at the time of the sale, in any respect varying or adding to the printed conditions or the description of the object offered. The information, in the present instance, was asked of the auctioneer, in whom the law recognizes no authority to give it, and who is not shown to have been authorized by the executors to furnish it."

The same principle had been adopted by the former Supreme Court in the case of *Macarty* v. *The New Orleans Canal and Banking Company*, 8 R. R. 102, and on the other hand, in the case of *Nott & Co.* v. *Oakey*, and the same against the Bank of Orleans, it was held, that the purchaser was not bound by conditions different from those advertised, although proclaimed in a loud and audible voice from the stand at the commencement of the sale, it not being shown, as in the present case, that the new conditions were heard by the purchaser. 19 L. R. 18 and 22.

The counsel of the plaintiff raises another fatal objection in law to the defence on the first grounds. The state of the premises was apparent to any person disposed to purchase. The advertisements were made to direct the attention of buyers to a personal inspection of the buildings. Courts cannot recognize the folly of buying without seeing the premises, because they are sold at auction or afford indemnification for the loss which results from such imprudence. Our Code, art. 2497, declares that apparent defects, that is, such as the buyer might have discovered by simple inspection are not among the number of redhibitory defects. Pothier amplifies the subject in a manner strikingly applicable to the present case. Pothier, Vente, No. 207. " On ne repute pas vices rédhibitoires ceux qui quoique considérables, peuvent facilement s'appercevoir; par example, ce n'est pas un vice rédhibitoire pour un cheval, s'il est boiteux, s'il est aveugle, &c.; *ni pour une maison, si elle tombe en ruine;* parceque ces vices pouvant facilement se connaître: l'acheteur est présumé en avoir eu connaissance, et avoir bien voulu acheter la chose avec ce vice et par consequente n'avoir souffert aucun tort, *nam volenti non fit injuria;* et quand même il ne l'aurait pas connu, il ne serait pas encore recevable à se plaindre du tort qu'il souffre de ce contrat; car c'est par sa faute qu'il le souffre; il ne tenait qu'a lui d'examiner la chose avant que de l'acheter, ou de la faire examiner par quelqu'un s'il ne s'y connissait pas lui même: ou un tort qu'une personne souffre par sa faute, n'est pas un tort auquel les loix doivent subvenir; les loix n'étant pas faites pour entretenir la negligence: damnum quod quis, culpâ suâ non sentit, non videtur sentire."

Besides these legal points so fatal to the defence, we concur with the district court, "that to allow an adjudication at public auction to be set aside in conse-

quence of a few loose words spoken by an auctioneer, of such indefinite meaning as the words *en bon etat*, would be likely to introduce an element of uncertainty in relation to public sales which would be detrimental to the public interest; and further, the evidence leaves the question of fact whether the house was not in a good state of repair so doubtful, that we could not reverse the judgment on the ground that it was untenantable."

The plaintiff advertised the property for the second sale precisely as advertised for the first, and for the reasons given, the defendant cannot complain that plaintiff did not make representations at this sale which she did not authorize before, and which he says were untrue.

The defendant lastly contends, that the second sale is not binding upon him, because not made by an auctioneer. A licensed auctioneer advertised it; attended at the St. Louis Exchange, the public place designated in the advertisement on the day of sale, superintended the sale, entered the adjudication on his sales book, and gave to the whole all the sanction and advantage which his presence and authority could give. The only objection is, that he employed a person to perform the merely ministerial duty of crying the property. There is no complaint that it was not cryed long and loud enough by the person usually employed by him, as capable, no doubt, of puffing the property as himself, so as to render it probable, in the words of the code, that no higher bid would be offered.

The second section of the act of 1850, forbidding an auctioneer to authorize any person to act as his substitute in making an auction sale, and requiring him, in all cases, to make in person the sales advertised by him, we think was complied with by attending and superintending the sale in person, and that directing his crier to perform the merely ministerial duty of crying the property was not a violation of the prohibition of the statute. For if so, the auctioneer could not direct his clerk on the spot to enter the adjudications in the sales books or his servants to scatter the advertisements and lithographs among the bidders.

We know that the act of 1850 was passed to prevent persons from holding a license as auctioneer, as a mere sinecure, selling out the business to others and delegating unauthorized persons to perform the whole duties, producing much confusion and disorder in the treasury department of the State, and irresponsibility in the auction business. The statute was intended to remedy and not to produce inconvenience and evils, by the strict interpretation for which the defendant contends.

The judgment of the district court is therefore affirmed, with costs.